# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **MARTHA HILL o/b/o A.R.H.,**  )<br>     Plaintiff                                   )<br>                                                )<br>v.                                              )<br>                                                )<br>**MICHAEL J. ASTRUE,**                          )<br>  **Commissioner of Social Security**,[1]       )<br>     Defendant                                 )<br>                                                ) | Civil Action No. 2:06cv00023<br>**MEMORANDUM OPINION**<br><br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying children's SSI benefits.

## I. Background and Standard of Review

Plaintiff, Martha Hill, ("Hill"), on behalf of her son, A.R.H., filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying A.R.H.'s claim for children's supplemental security income, ("SSI"), benefits under Title XVI of the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 1381-1383d. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge on transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

Hill protectively filed an application for children's SSI on behalf of her son on July 17, 2003, alleging disability as of July 17, 2003,[2] based on asthma, bronchitis and headaches.[3] (Record, ("R."), at 82-86, 95, 121.) Hill's claim was denied initially and on reconsideration. (R. at 69-71, 75, 76-78.) Hill then requested a hearing before an administrative law judge, ("ALJ"). (R. at 80.) A hearing was held on September 13, 2004, at which she was represented by counsel. (R. at 428-37.)

By decision dated October 15, 2004, the ALJ denied Hill's claim. (R. at 33-40.)

---

[2] Hill initially alleged an onset date of October 22, 1993, but at the hearing amended it to July 17, 2003. (R. at 82, 430.)

[3] Hill previously protectively filed an application for children's SSI benefits on behalf of her son on May 22, 2002, alleging disability as of May 22, 2002. (R. at 33.) This claim was denied initially and on reconsideration. (R. at 33.) An ALJ denied Hill's claim by decision dated July 15, 2003. (R. at 33.) Hill pursued this claim no further. (R. at 33.) That being the case, the previous decision is *res judicata* and, therefore, the relevant time period currently before the court is from July 16, 2003, the day following the previous ALJ's decision, to October 15, 2004, the date of the current ALJ's decision.

The ALJ found that A.R.H. had not performed any substantial gainful activity since the amended alleged onset date. (R. at 40.) The ALJ found that the medical evidence established that A.R.H. suffered from a severe respiratory impairment, but he found that A.R.H. did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 40.) The ALJ also found that A.R.H. did not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning and did not functionally equal the severity of the listings. (R. at 40.) The ALJ found that A.R.H.'s subjective complaints were considered credible only to the extent they were supported by the evidence of record. (R. at 40.) Thus, the ALJ concluded that A.R.H. was not under a disability as defined in the Act at any time from the amended alleged onset date through the date of his decision and was not eligible for children's SSI benefits. (R. at 40.) *See* 20 C.F.R. § 416.924(d)(2) (2006); *see also* 42 U.S.C.A. § 1382c(a)(3)(C)(i) (West 2003 & Supp. 2006).

After the ALJ issued his decision, Hill pursued her administrative appeals, (R. at 25), but the Appeals Council denied her request for review. (R. at 5-8.) Hill then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2006). The case is before this court on Hill's motion for summary judgment filed September 18, 2006, and the Commissioner's motion for summary judgment filed October 23, 2006.

## *II. Facts*

A.R.H. was born in 1993 and was enrolled in regular fifth-grade classes at the time of the ALJ's hearing. (R. at 431.) Hill testified that A.R.H. suffered from

-3-

asthma, which worsened from September through April. (R. at 432.) She stated that, during the winter months, he was "constantly on medicine." (R. at 432.) Hill testified that A.R.H. was on two breathing treatments at home. (R. at 432.) She stated that beginning in September, A.R.H. would cough, wheeze and choke. (R. at 432.) Hill testified that he was taking five different medications. (R. at 433.) She testified that A.R.H. missed a lot of school due to his asthma, noting that the previous school year, he missed approximately 20 days. (R. at 433-34.) Hill testified that her son participated in physical education classes at school and could ride a bicycle. (R. at 434.) She further stated that A.R.H. was on the school's football team. (R. at 434-35.) Hill testified that she had to give her son a breathing treatment before he left for school, which made him nervous and jittery. (R. at 436.) She stated that A.R.H.'s asthma made him more susceptible to other illnesses. (R. at 436.)

In rendering his decision, the ALJ reviewed records from Norton Community Hospital; Appalachian Regional Healthcare; Johnson City Medical Center; Dr. B. Sheshadri, M.D.; Dr. A.M. Vedha, M.D.; Dr. Elpidio Capalid, M.D.; Dr. Sjuresh Jain, M.D.; Wise County Public Schools; Dr. Ricky Mohan, M.D.; Community Hospital Pharmacy; Dr. F. Joseph Duckwall, M.D., a state agency physician; Dr. Richard M. Surrusco, M.D., a state agency physician; and Coeburn Middle School. Hill's attorney also submitted additional medical records from Dr. Vedha; Norton Community Hospital; and ETSU Pediatrics to the Appeals Council.[4]

---

[4]Although this evidence was submitted to the Appeals Council, because it related to a period not relevant to the ALJ's disability determination, it was not considered as evidence by the Appeals Council. (R. at 6.) In fact, the Appeals Council noted that Hill had filed a new children's SSI application on behalf of her son and that these medical records would be considered in connection therewith. (R. at 6.) That being the case, this court need not consider this evidence in determining whether substantial evidence supports the ALJ's disability

A.R.H. saw Dr. Ricky Mohan, M.D., on July 16, 2003, the day following the ALJ's previous decision. (R. at 383.) The record reveals that A.R.H. saw Dr. Mohan for a follow-up of his asthma. (R. at 383.) A.R.H. reported increased exercise intolerance, and he noted no emergency room treatment or hospitalizations. (R. at 383.) At that time, A.R.H. was on Asthmacort, Pulmicort, Singulair, Albuterol and an Albuterol inhaler. (R. at 383.) His lungs were clear. (R. at 383.) Spirometry testing revealed only mild airflow limitation. (R. at 383.) He was diagnosed with mild persistent asthma with slight deterioration and was treated with medications. (R. at 383.) A.R.H. saw Dr. A.M. Vedha, M.D., on August 29, 2003, with complaints of a cough, runny nose, sore throat and fever. (R. at 388.) His lungs were clear to auscultation. (R. at 388.) Dr. Vedha diagnosed an upper respiratory infection and advised A.R.H. to continue his asthma medications. (R. at 388.) On September 12, 2003, A.R.H.'s lungs were again clear, and he was again diagnosed with an upper respiratory infection and moderate persistent asthma. (R. at 388.) On October 14, 2003, A.R.H.'s lungs were clear to percussion and auscultation. (R. at 387.) He was diagnosed with acute pharyngotonsilitis and mild persistent asthma. (R. at 387.) On December 3, 2003, A.R.H. complained of coughing, chest congestion, stuffy nose, sore throat and fever. (R. at 386.) His lungs were again clear to percussion and auscultation. (R. at 386.) His diagnoses remained unchanged. (R. at 386.)

On December 8, 2003, Dr. F. Joseph Duckwall, M.D., a state agency physician, completed a Childhood Disability Evaluation Form. (R. at 391-96.) Dr. Duckwall opined that A.R.H.'s asthma and bronchitis were severe, but did not meet, medically equal or functionally equal a listed medical impairment. (R. at 391.) Dr. Duckwall

---

determination.

found that A.R.H. had less than marked limitations in the domain of moving about and manipulating objects and in the domain of health and physical well-being. (R. at 393.) He found that A.R.H. had no limitations in the domains of caring for himself, acquiring and using information, attending and completing tasks and interacting and relating to others. (R. at 393, 395.) Dr. Duckwall found A.R.H.'s allegations regarding his symptoms partially credible. (R. at 396.)

On January 5, 2004, A.R.H. again saw Dr. Vedha with complaints of fever, chills, body aches and cough for the previous two days. (R. at 216.) A.R.H. was diagnosed with acute exudative tonsilitis. (R. at 216.) On February 5, 2004, he was diagnosed with a viral syndrome and an upper respiratory syndrome. (R. at 216.)

Dr. Richard M. Surrusco, M.D., a state agency physician, completed a Childhood Disability Evaluation Form on February 18, 2004. (R. at 397-400.) Like Dr. Duckwall, Dr. Surrusco found that A.R.H.'s asthma and bronchitis were severe, but did not meet, medically equal or functionally equal a listed medical impairment. (R. at 397.) Dr. Surrusco opined that A.R.H. had less than marked limitations in the domain of moving about and manipulating objects and in the domain of health and physical well-being. (R. at 399-400.) In the other four domains, Dr. Surrusco found that A.R.H. had no limitations. (R. at 399-400.)

On April 5, 2004, A.R.H. again saw Dr. Vedha. (R. at 417.) At this time, his lungs were clear to percussion and auscultation. (R. at 417.) He was diagnosed with acute gastroenteritis and was prescribed Phenergan. (R. at 417.) On May 5, 2004, A.R.H. presented to the emergency department at Norton Community Hospital after

wrecking his bicycle the previous day. (R. at 422-25.) He complained of right shoulder pain and double vision. (R. at 422.) The attending physician noted that A.R.H. was in no respiratory distress and that his breath sounds were normal. (R. at 422.) He was diagnosed with various contusions and a right wrist sprain. (R. at 423.) On June 9, 2004, A.R.H. again presented to the emergency department of Norton Community Hospital. (R. at 418-21.) He complained of chest pain and shortness of breath. (R. at 418.) It was noted that A.R.H. was in no acute respiratory distress and his breath sounds were normal. (R. at 419.) He was diagnosed with gastroesophageal reflux disease, ("GERD"), and was prescribed Pepcid. (R. at 419.)

On August 19, 2004, A.R.H. saw Dr. Mohan for an annual checkup. (R. at 414.) A.R.H. reported no episodes of emergency room treatment or hospitalizations. (R. at 414.) A physical examination revealed clear lungs. (R. at 414.) Spirometry testing revealed a mild airflow limitation. (R. at 414.) Dr. Mohan diagnosed mild persistent asthma under good control. (R. at 414.) On August 26, 2004, Dr. Mohan opined that A.R.H.'s condition met or at least equaled § 103.03(C), the medical listing for asthma. (R. at 415, 427.) Dr. Mohan's report does not list any of his specific findings which support this conclusion.

### III. Analysis

A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less than 12 months. 42 U.S.C.A. § 1382c(a)(3)(C)(i) (West 2003 & Supp. 2006). The Commissioner uses a three-step process in evaluating children's SSI claims. *See* 20

-7-

C.F.R. § 416.924 (2006). This process requires the Commissioner to consider, in order, whether the child 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets, medically equals or functionally equals[5] the requirements of a listed impairment. *See* 20 C.F.R. § 416.924 (2006). As with the process for adults, if the Commissioner finds conclusively that a child is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.924 (2006). Thus, under the applicable regulations, an ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets, medically equals or functionally equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 416.924(d)(1) (2006); *see also* 42 U.S.C.A. § 1382c(a)(3)(C)(i) (West 2003 & Supp. 2006).

By decision dated October 15, 2004, the ALJ denied Hill's claim. (R. at 33-40.) The ALJ found that A.R.H. had not performed any substantial gainful activity since the amended alleged onset date. (R. at 40.) The ALJ found that the medical evidence established that A.R.H. suffered from a severe respiratory impairment, but he found that A.R.H. did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 40.)

---

[5]An impairment functionally equals a listed impairment if there are marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a (2006). A "marked limitation" will be found in a domain when an impairment interferes seriously with the ability to independently initiate, sustain or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i) (2006). A "marked limitation" also means "more than moderate," but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(ii) (2006). An "extreme limitation" will be found in a domain when an impairment interferes very seriously with the ability to independently initiate, sustain or complete activities. *See* 20 C.F.R. § 416.926a(e)(3)(i) (2006). An "extreme limitation" also means a limitation that is "more than marked." 20 C.F.R. § 416.926a(e)(3)(I) (2006).

The ALJ also found that A.R.H. did not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning and did not functionally equal the severity of the listings. (R. at 40.) The ALJ found that A.R.H.'s subjective complaints were considered credible only to the extent they were supported by the evidence of record. (R. at 40.) Thus, the ALJ concluded that A.R.H. was not under a disability as defined in the Act at any time from the amended alleged onset date through the date of his decision and was not eligible for children's SSI benefits. (R. at 40.) *See* 20 C.F.R. § 416.924(d)(2) (2006); *see also* 42 U.S.C.A. § 1382c(a)(3)(C)(i) (West 2003 & Supp. 2006).

In her brief, Hill argues that the ALJ erred in failing to find that A.R.H.'s condition met or equaled the listed impairment for asthma found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 103.03. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 5-8.) Hill also argues that the ALJ erred by failing to solicit the testimony of a medical expert regarding the severity of A.R.H.'s impairments. (Plaintiff's Brief at 8-9.)

As stated above, the court must determine if there is substantial evidence in the record to support the ALJ's decision that A.R.H. was not under a disability as defined in the Act. If substantial evidence exists to support this finding, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws*, 368 F.2d at 642. Also, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). "Thus, it is not within the province of a reviewing court to determine the weight of the

-9-

evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456.

To meet or equal the listed impairment for asthma found at § 103.03, a claimant must show that he suffers from asthma with:

> A. $FEV_1$ equal to or less than the value specified in table I of 103.02A; Or
>
> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks; Or
>
> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following: (1) Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or (2) Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period; Or
>
> D. Growth impairment as described under the criteria in 100.00.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03 (2006.)

There is no evidence contained in the record pertinent to the relevant time

-10-

period showing that A.R.H. had a $FEV_1$ equal to or less than the value specified in table I of § 103.02A.[6] Likewise, the record is void of evidence showing that A.R.H., during the relevant time period, suffered asthma attacks in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. In fact, the record reveals that from July 2003 through October 2004, A.R.H. suffered no asthma attacks that required physician intervention. The only visits to the emergency room during the relevant time period were for treatment of a sprained wrist and GERD. (R. at 418-25.) Next, I find that A.R.H.'s condition does not meet the criteria set forth in § 103.03(C). Specifically, there is no evidence of persistent low-grade wheezing, and there is no evidence of an absence of extended symptom-free periods that required A.R.H. to use a bronchodilator both day and night. Physical examinations consistently revealed that A.R.H.'s lungs were clear to percussion and auscultation. (R. at 386-88, 414, 417.) Likewise, on May 5, 2004, and June 9, 2004, examinations revealed that A.R.H. was in no acute respiratory distress and that he exhibited normal breath sounds. (R. at 419, 422.) Spirometry testing performed in July 2003 and again in August 2004 revealed only a mild airflow limitation. (R. at 383, 414.) During this time period, A.R.H. was consistently diagnosed with mild persistent asthma. (R. at 383, 386, 414.) On August 19, 2004, Dr. Mohan noted that A.R.H.'s asthma was under good control. (R. at 414.) Finally, there is no evidence in the record showing that A.R.H. suffered from any type of growth impairment. In fact, Hill testified at the hearing that A.R.H., who was then 11 years old, was approximately four feet tall and weighed approximately 100 pounds. (R. at 435.) She testified that he played the position of lineman on his school's

---

[6] I note that there does appear to be evidence submitted to, but not considered by, the Appeals Council that shows that A.R.H.'s $FEV_1$ was equal to or less than the appropriate value. (R. at 15.) However, this evidence is not relevant to the claim currently before this court.

-11-

football team. (R. at 434-35.)

Moreover, the state agency physicians, Drs. Duckwall and Surrusco, both found that A.R.H.'s impairments did not meet or medically equal a listed impairment. (R. at 391, 397.) Despite Dr. Mohan's statement on August 26, 2004, that A.R.H.'s impairment met or at least equaled the criteria contained in § 103.03(C), I note that the finding as to whether a claimant's impairment meets or equals a medical listing is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(2) (2006).

For all of these reasons, I find that substantial evidence supports the ALJ's finding that A.R.H.'s impairments did not meet or medically equal the listing for asthma found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 103.03. For the following reasons, I further find that A.R.H.'s impairments did not functionally equal the criteria of § 103.03. As stated previously, in order for a claimant's impairment to be functionally equivalent to a listed impairment, there must be marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a (2006). Dr. Duckwall and Dr. Surrusco, both state agency physicians, completed Childhood Disability Evaluation Forms on December 8, 2003, and February 18, 2004, respectively, concluding that A.R.H. had less than marked limitations in the domain of moving about and manipulating objects and in the domain of health and physical well-being. (R. at 393, 400.) In the other four domains, both state agency physicians found that A.R.H. had no limitations. (R. at 393, 395, 399-400.) For the reasons already stated, I find that these opinions are supported by substantial evidence of record.

For all of these reasons, I find that substantial evidence supports the ALJ's finding that A.R.H.'s condition did not meet, medically equal or functionally equal the requirements of § 103.03.

Hill further argues that the ALJ erred by failing to solicit testimony from a medical expert regarding the severity of A.R.H.'s impairments. I disagree. Here, there was ample evidence upon which the ALJ could rely in reaching his finding regarding the severity of A.R.H.'s impairments, including medical records from treating sources as well as two state agency physicians. I find that, for the reasons stated above, substantial evidence supports the ALJ's disability finding, thereby negating the need for expert medical testimony regarding the severity of A.R.H.'s impairments.

### III. Conclusion

For the foregoing reasons, Hill's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

I further deny Hill's request to present oral argument based on my finding that it is not necessary in that the parties have more than adequately addressed the relevant issues in their written arguments.

An appropriate order will be entered.

DATED:   This 1st day of March 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-14-

Case 2:06-cv-00023-PMS   Document 15   Filed 03/01/07   Page 14 of 14   Pageid#: 77